Bruce V. Spiva, CA Bar No. 164032
Brian G. Svoboda*
Stephanie Command*
BSpiva@perkinscoie.com
BSvoboda@perkinscoie.com
SCommand@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone:     202.654.6200
Facsimile:     202.654.6211

Torryn Taylor Rodgers, CA Bar No. 319126
TRodgers@perkinscoie.com
PERKINS COIE LLP
505 Howard St., Suite 1000
San Francisco, CA 94105-3204
Telephone:     415.344.7000

*Attorneys for Defendant
SKDKnickerbocker, LLC*

*Applications for admission pro hac vice forthcoming*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROGAN O'HANDLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEX PADILLA, in his personal capacity; SKDKNICKERBOCKER, LLC, a Delaware company; PAULA VALLE CASTANON, in her personal capacity; JENNA DRESNER, in her personal capacity; SAM MAHOOD, in his personal capacity; AKILAH JONES; in her personal capacity; SHIRLEY N. WEBER, in her official capacity as California Secretary of State; TWITTER, INC., a Delaware corporation; NATIONAL ASSOCIATION OF SECRETARIES OF STATE, a professional nonprofit organization,<br><br>    Defendants. | Case No. 2:21-cv-07063-CRB<br><br>**DEFENDANT SKDKNICKERBOCKER'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     December 16, 2021<br>Time:     10:00 a.m.<br>Ctrm:     6 – 17th Floor<br>Judge:    Honorable Charles R. Breyer |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 16, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor of the above Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant SKDKnickerbocker ("SKDK") will and hereby does move for an order dismissing Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

**SUMMARY OF ARGUMENT**

**Motion to Dismiss for Lack of Standing.** Plaintiff's claims against SKDK should be dismissed for lack of standing because Plaintiff does not allege a cognizable injury-in-fact and his alleged injuries are not fairly traceable to SKDK. Although Plaintiff alleges that he was injured by Twitter's decision to remove his Tweets and ultimately suspend his account, he identifies no cognizable injury resulting from any action taken by SKDK. Because he has not identified how SKDK's specific actions inflicted concrete and particularized injury upon him, or how his injuries are traceable to SKDK, Plaintiff has failed to plead standing against SKDK.

**Motion to Dismiss for Failure to State a Claim.** Even if Plaintiff could clear the standing hurdle, each of Plaintiff's claims against SKDK should be dismissed for failure to plausibly allege that SKDK violated any of Plaintiff's state or federal constitutional or statutory rights. Plaintiff's constitutional and Section 1983 claims all must be dismissed for the same fundamental reason: those rights are protected against invasion by the government—not private actors like SKDK. Not only that, but Plaintiff fails to allege that SKDK actually deprived him of his rights of free speech, equal protection, or due process. Nor does he allege a civil conspiracy operated by the Defendants with the intention to accomplish that goal. Because the Complaint fails as a matter of law, it must be dismissed.

1    This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and

2    Authorities in Support, as well as all papers and pleadings filed herein, and such argument as

3    properly may be presented at a hearing.

4    **STATEMENT OF RELIEF SOUGHT**

5    Defendant SKDK seeks an order dismissing each of Plaintiff's claims against SKDK with

6    prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

7

8    Dated:  October 5, 2021                    **PERKINS COIE LLP**

9

10                                              By:  */s/ Bruce V. Spiva*

11                                              Bruce V. Spiva, Bar No. 164032

12                                              *Attorneys for Defendant*
                                                *SKDKnickerbocker, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

LEGAL STANDARDS ....................................................................................... 3

ARGUMENT .................................................................................................... 4

I.       All claims against SKDK should be dismissed for lack of standing...................... 4

        A.       Plaintiff has not established injury-in-fact. ................................. 4

        B.       Plaintiff has not established traceability........................................ 5

II.      The Complaint fails to state cognizable claims against SKDK. ........................... 6

        A.       Plaintiff's constitutional claims against SKDK fail for lack of state action. (Claims I, II, III, and IV). ................................. 6

        B.       Plaintiff's Section 1983 claims against SKDK fail because SKDK did not act under color of state law.  (Claims I, III, and IV). ..................... 8

        C.       Even assuming that the Complaint established state action, Plaintiff fails to allege substantive constitutional violations................................... 11

                1.       Plaintiff's free speech claims fail (Claims I and II). .................. 11

                2.       Plaintiff's equal protection discrimination claim against SKDK fails (Claim III)................................................................ 12

                3.       Plaintiff's procedural due process claim against SKDK fails (Claim IV). ................................................................... 13

                4.       Plaintiff's conspiracy claim fails (Claim VI). ............................ 14

CONCLUSION ................................................................................................ 15

2:21-cv-07063-CRB
DEFENDANT SKDKNICKERBOCKER'S
NOTICE OF MOTION AND MOTION TO DISMISS

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
5
    526 U.S. 40 (1999) ..................................................................................................8

6

*Ashcroft v. Iqbal*,
7
    556 U.S. 662 (2009) ................................................................................................4

8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................3

9

*Bishop v. Wood*,
10
    426 U.S. 341 (1976) ..............................................................................................14

11

*Blum v. Yaretsky*,
    457 U.S. 991 (1982) .............................................................................................7, 8
12

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
13
    531 U.S. 288 (2001) ................................................................................................9

14

*Carrico v. City & Cty. of San Francisco*,
15
    656 F.3d 1002 (9th Cir. 2011) ...............................................................................5

16

*Clapper v. Amnest Int'l USA*,
    568 U.S. 398 (2013) ................................................................................................6
17

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*,
18
    232 Cal. App. 4th 1171 (2014) ...............................................................................8

19

*E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
20
    365 U.S. 127 (1961) ................................................................................................5

21

*Fashion Valley Mall, LLC v. Nat'l Lab. Rels. Bd.*,
    42 Cal. 4th 850 (2007) ...........................................................................................8
22

*FW/PBS, Inc. v. City of Dallas*,
23
    493 U.S. 215 (1990) ................................................................................................3

24

*Gillespie v. Civiletti*,
25
    629 F.2d 637 (9th Cir. 1980) ...............................................................................14

26

*Golden Gate Transactional Indep. Serv., Inc. v. California*,
    No. CV18-08093, 2019 WL 4222452 (C.D. Cal. May 1, 2019) ..............................4
27

28

1

2

### TABLE OF AUTHORITIES
**(continued)**

3

**Page(s)**

4

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n,*
26 Cal. 4th 1013 (2001) ...........................................................................7, 11

5

6

*Griffin v. Breckenridge,*
403 U.S. 88 (1971) ................................................................................14, 15

7

*Hill St. Health Servs. LLC v. Cty. of Los Angeles,*
No. 16-02486, 2016 WL 9453998 (C.D. Cal. Nov. 16, 2016)...................12, 13, 14

8

9

*Hodel v. Indiana,*
452 U.S. 314 (1981) .....................................................................................13

10

11

*Jackson v. Metropolitan Edison Co.,*
419 U.S. 345 (1974) .......................................................................................7

12

*Karim-Panahi v. L.A. Police Dep't,*
839 F.2d 621 (9th Cir. 1988)..................................................................14, 15

13

14

*Kinderstart.com LLC v. Google, Inc.,*
No. 06-2057, 2007 WL 831806 (N.D. Cal. Mar. 16, 2007)............................8

15

16

*LSO, Ltd. v. Stroh,*
205 F.3d 1146 (9th Cir. 2000)......................................................................4

17

18

*Lugar v. Edmondson Oil Co.,*
457 U.S. 922 (1982) .......................................................................................6

19

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992)................................................................................3, 4, 5

20

21

*Maya v. Centex Corp.,*
658 F.3d 1060 (9th Cir. 2011).......................................................................4

22

*Meese v. Keene,*
481 U.S. 465 (1987) .....................................................................................11

23

24

*Moose Lodge No. 107 v. Irvis,*
407 U.S. 163 (1972) .......................................................................................7

25

*NCAA v. Tarkanian,*
488 U.S. 179 (1988).................................................................................9, 10

26

27

*Paralyzed Veterans of Am. v. McPherson,*
No. 06-4670, 2008 WL 4183981 (N.D. Cal. Sept. 9, 2008) ........................13

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3

**Page(s)**

4

*Pierce v. Ducey*,
    965 F.3d 1085 (9th Cir. 2020).............................................................................4, 5

5

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020)...................................................................................7

6

7

*Rawson v. Recovery Innovations, Inc.*,
    975 F.3d 742 (9th Cir. 2020)...................................................................................9

8

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982).........................................................................................7, 8, 9

9

10

*Renne v. Geary*,
    501 U.S. 312 (1991)...................................................................................................3

11

*Robins v. Pruneyard Shopping Ctr.*,
    23 Cal. 3d 899 (1979).............................................................................................8

12

13

*Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*,
    279 F.3d 817 (9th Cir. 2001)...................................................................................3

14

*Scocca v. Smith*,
    No. C-11-1318, 2012 WL 2375203 (N.D. Cal. June 22, 2012)..............................12

15

16

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992)................................................................................15

17

18

*Shepherd v. Jones*,
    136 Cal. App. 3d 1049 (1982)................................................................................14

19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).........................................................................................4, 5

20

21

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989)..................................................................................9

22

23

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    865 F.2d 1539 (9th Cir. 1989) (en banc)................................................................15

24

*Village of Willowbrook v Olech*,
    528 U.S. 562 (2000)................................................................................................13

25

26

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................4

27

28

1

2

**TABLE OF AUTHORITIES**
**(continued)**

3

**Page(s)**

4

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013)...............................................................................4, 6

5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000)...................................................................................3

6

7

**STATUTES**

8

Cal. Elec. Code § 10.5(b)(2) .....................................................................................2, 13

9

**RULES**

10

Fed. R. Civ. P. 12(b)(1).............................................................................................3, 4

11

Fed. R. Civ. P. 12(b)(6).................................................................................................3

12

**OTHER AUTHORITIES**

13

Cal. Const., art. I, § 2 ................................................................................................11

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case centers on the suspension of Plaintiff's Twitter account. After he repeatedly violated Twitter's terms of service by using their platform to perpetuate falsehoods about the 2020 election, Twitter revoked Plaintiff's license to continue to use their services. Plaintiff himself concedes that Twitter suspended his account in compliance with their own disciplinary policy, but nonetheless claims a constitutional right to spread election misinformation on Twitter's platform.

If you are finding it difficult to locate Defendant SKDKnickerbocker ("SKDK") in this story, you are not alone. Although his central dispute is plainly with Twitter, Plaintiff has nonetheless named as a defendant anyone who flagged his Tweet to Twitter, anyone who flagged his Tweet to California's Office of Elections Cybersecurity ("OEC"), and any government officials or private organizations involved in identifying election misinformation. In Plaintiff's telling, SKDK violated his constitutional rights by including one of his Tweets in a "Misinformation Daily Briefing" to the OEC. After a series of intervening events by other actors—including an OEC report to Twitter and Plaintiff's repeated independent violations of Twitter's disciplinary policy—Twitter suspended Plaintiff's account. Because these facts fail to establish that SKDK actually caused any harm to Plaintiff, the Complaint should be dismissed.

As a threshold matter, Plaintiff lacks standing because he does not allege a cognizable injury-in-fact and because his alleged injuries are not fairly traceable to SKDK. Both failures leave the Court without jurisdiction under Article III.

Even if Plaintiff had standing, the claims against SKDK fail as a matter of law. The constitutional and Section 1983 claims all guarantee rights against invasion by the government itself—not private actors like SKDK. Even if Plaintiff could clear that critical hurdle, the allegations in the Complaint do not demonstrate that SKDK actually deprived him of his rights of free speech, equal protection, or due process. Nor do the allegations support the inference that Defendants formed a civil conspiracy to accomplish that goal. Because the Complaint fails as a matter of law, it must be dismissed.

-1-

1

## BACKGROUND

2
3
4
5
6
7

In the wake of the 2020 general election, various groups sought to mitigate the problem of election misinformation. Compl. ¶ 1. Among those groups was Twitter, which established a "civic integrity policy" and created a "Partner Support Portal" for third parties to report violations of that policy. Compl. ¶¶ 3, 28, 32. Twitter's policy relied on a "strike system." *Id.* ¶ 79. If Twitter found a Tweet violated the policy, Twitter would apply a "strike" to the user's account. *Id.* After a user accumulated five "strikes," Twitter would remove the user from its platform. *Id.*

8
9
10
11
12
13
14
15
16

In 2018, California created the OEC. *Id.* ¶ 2. The OEC's mission is to "monitor and counteract false or misleading information regarding the electoral process that is published online." *Id.* ¶ 20 (quoting Cal. Elec. Code § 10.5(b)(2)). It does so by "working closely with social media companies" to mitigate "false or misleading information." *Id.* ¶¶ 22, 24-25. The State also developed its "Vote Safe California" initiative. *Id.* ¶ 37. Part of that initiative included a public education campaign designed to encourage voters to be vigilant about election misinformation. Compl. Ex. 7. The State invited individual voters to participate in the initiative "by reporting suspicious content or election misinformation found on social media directly to a VoteSure email inbox." *Id.* at 3.

17
18
19
20
21

Two years after the creation of the OEC, the California Secretary of State's Office recruited political consultants and political affairs professionals to help facilitate the monitoring of misinformation online. Compl. ¶ 37. SKDK was hired as a private contractor in furtherance of this goal. *Id.* ¶ 42. Among other things, the contract required SKDK to provide daily briefings regarding election-related misinformation posted online. *Id.* ¶ 57.

22
23
24
25

On November 13, 2020, SKDK sent members of the OEC a daily briefing summarizing and linking to 21 social media posts, online news articles, and search trends that related to the subject of election integrity. *See* Compl. Ex. 6. Without adding any commentary, that briefing included one of Plaintiff's Tweets:

26

27

@DC_Draino tweeted, "Audit every California ballot Election fraud is rampant nationwide and we all know California is one of the culprits Do it to protect the integrity of that state's elections."

28

-2-

*Id.* Four days after SKDK "flagged" Plaintiff's post, *id.* ¶ 74, a staff member from the Secretary's office then identified Plaintiff's Tweet as one of 30 total posts for Twitter to review. *Id.* ¶¶ 76-77; *see also* Compl. Ex. 9. The message did not mention SKDK.[1]

Hi, We wanted to flag this Twitter post:
https://twitter.com/DC_Draino/status/1327073866578096129
From user @DC_Draino. In this post user claims California of being
a culprit of voter fraud, and ignores the fact that we do audit votes.
This is a blatant disregard to how our voting process works and
creates disinformation and distrust among the general public.

Twitter then applied its own internal policies to Plaintiff's post. Compl. ¶¶ 74-79. On the basis of those policies, Twitter added a "strike" to Plaintiff's account. *Id.* ¶ 78. Plaintiff went on to accumulate four more "strikes," after which Twitter suspended his account. *Id.* ¶¶ 79, 84-88.

## LEGAL STANDARDS

To satisfy Rule 12(b)(1), a plaintiff must establish the court's jurisdiction through sufficient allegations. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When courts evaluate a motion to dismiss under Rule 12(b)(1), they "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In fact, courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (cleaned up). To overcome that presumption, the plaintiff cannot rely solely on conclusory allegations of injury, and instead must allege specific facts demonstrating that the court has the power to entertain the suit. *Schmier v. U.S. Ct. of Appeals for the Ninth Cir.*, 279 F.3d 817, 820 (9th Cir. 2001); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[1] Without comment, Plaintiff's Complaint includes an edited image of SKDK's November 13 daily briefing email. *Compare* Compl. ¶ 74 *with* Compl. Ex. 6. The edited image misrepresents SKDK's daily briefing email as including only Plaintiff's Tweet, Compl. ¶ 74, when the daily briefing email noted 20 other articles and social media posts from people other than Plaintiff, Compl. Ex. 6.

-3-

U.S. 544, 570 (2007). This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More than pleading facts that are "merely consistent with" a defendant's liability, the complaint must include factual allegations that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.   All claims against SKDK should be dismissed for lack of standing.

All claims against SKDK should be dismissed because Plaintiff fails to meet the requirements of Article III standing. Whether a plaintiff has standing presents a "threshold question in every federal case [because it determines] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Plaintiff bears the burden of establishing standing. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1152 (9th Cir. 2000). To do so, Plaintiffs must show they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A failure of any of the three elements deprives a plaintiff of standing to maintain an action in federal court. *Lujan*, 504 U.S. at 560-61. Where there are multiple defendants, a plaintiff must allege Article III standing as to each named defendant, for each claim. *See Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013); *see also Golden Gate Transactional Indep. Serv., Inc. v. California*, No. CV18-08093, 2019 WL 4222452, at *7 (C.D. Cal. May 1, 2019). When a party lacks Article III standing, the court must dismiss the action "for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### A.   Plaintiff has not established injury-in-fact.

Plaintiff cannot meet the injury-in-fact requirement of Article III because he has not alleged facts supporting that he was actually injured by any of SKDK's actions. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). To be

-4-

1   "particularized," an injury "must affect the plaintiff in a personal and individual way." *Pierce v.*

2   *Ducey*, 965 F.3d 1085, 1089 (9th Cir. 2020) (citation omitted). "To be concrete, the injury must

3   actually exist—an abstract, theoretical concern will not do." *Id.* (cleaned up).  Conclusory

4   allegations that a defendant's conduct runs afoul of the First Amendment will not suffice to establish

5   injury-in-fact unless the plaintiff alleges facts establishing that defendant's actions could constitute

6   constitutional injury. *See Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1007 (9th Cir.

7   2011) (affirming dismissal of First Amendment claim where plaintiffs' allegations "could not

8   establish even a threat" of unlawful deprivation).

9        The crux of Plaintiff's Complaint is that he was injured by Twitter's decision to remove his

10  Tweets and ultimately suspend his account. Compl. ¶¶ 108, 135, 139, 152, 169. But the Complaint's

11  sole allegation about SKDK's actions is that it flagged one of Plaintiff's Tweets to OEC in a

12  November 2020 briefing. *Id.* ¶ 74. The Complaint identifies no cognizable injury that results when

13  an actor reports a Tweet to a government agency as a potential source of election misinformation.

14  To the contrary, SKDK itself has broad First Amendment protections to communicate with its

15  government without the threat of litigation. *See E. R.R. Presidents Conf. v. Noerr Motor Freight,*

16  *Inc.*, 365 U.S. 127, 137-38 (1961) (recognizing the right of petition falls in the Bill of Rights and

17  noting that "[i]n a representative democracy such as this… the whole concept of representation

18  depends upon the ability of the people to make their wishes known to their representatives.").

19       Because he has not identified how SKDK's specific actions inflicted concrete and

20  particularized injury upon him, Plaintiff has failed to plead an injury-in-fact. *See Lujan*, 504 U.S.

21  at 561 (stating that a plaintiff must establish standing with the "manner and degree of evidence

22  required at the successive stages of the litigation"). The defect is fatal and the claims against SKDK

23  must be dismissed for lack of jurisdiction.

24            **B.     Plaintiff has not established traceability.**

25       Even if the Complaint had sufficiently pled injury-in-fact, the Court would still lack

26  jurisdiction to adjudicate claims against SKDK because Plaintiff's alleged injury is not "fairly

27  traceable to the challenged conduct" of SKDK. *See Spokeo*, 136 S.Ct. at 1547. Allegations that "rest

28

-5-

on speculation about the decisions of independent actors" do not satisfy the traceability requirement. *Clapper v. Amnest Int'l USA*, 568 U.S. 398, 414 (2013). Rather, the "line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Wash. Env't Council*, 732 F.3d at 1141. As described in the Complaint, Plaintiff's alleged injury stems from Twitter's decision to suspend his account. *See* Compl. ¶¶ 88, 99. But Plaintiff does not allege—nor can he—that SKDK controlled or even knew about Twitter's decision. The opposite is true; the Complaint acknowledges that Twitter's decision to suspend his account was based on Twitter's own internal "strike system" discipline policy. *Id.* ¶ 79. The Complaint contains no allegations that SKDK controlled, developed, implemented, or enforced that policy.

At bottom, Plaintiff challenges only one action taken by SKDK: its inclusion of a single Tweet by Plaintiff in a briefing to the OEC about election misinformation. *Id.* ¶ 74. That initial report is attenuated from OEC's later decision to report the Tweet to Twitter, Twitter's subsequent decision to apply a single "strike" to Plaintiff's account, Plaintiff's accumulation of four more disciplinary "strikes," and Twitter's ultimate decision to suspend Plaintiff's account. *Id.* ¶¶ 84-88. These are precisely the kind of "attenuated" links that fail to satisfy the traceability requirement. *Wash. Env't Council*, 732 F.3d at 1142. Plaintiff's claims against SKDK must be dismissed.

## II.   The Complaint fails to state cognizable claims against SKDK.

Even if the Court possessed jurisdiction to adjudicate this case, it should still dismiss Plaintiff's claims against SKDK for failure to plausibly allege that SKDK violated any of Plaintiff's state or federal constitutional or statutory rights. The Complaint also fails to plead facts that, accepted as true, could establish a conspiracy to deprive Plaintiff of any right or privilege.

### A.   Plaintiff's constitutional claims against SKDK fail for lack of state action. (Claims I, II, III, and IV).

Each of Plaintiff's constitutional claims against SKDK suffers from the same fundamental flaw: the constitutional rights Plaintiff asserts protect only against infringement by the government, not a private actor like SKDK. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) ("As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of

1   the fact that most rights secured by the Constitution are protected only against infringement by

2   governments." (cleaned up)); *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th

3   1013, 1027-28 (2001) ("Based on the historical evidence suggesting that the framers of California's

4   free speech clause intended to protect against governmental—and not private—encroachments, and

5   the absence of any evidence to the contrary, we see no grounds for reaching a different

6   conclusion."). That remains true even where challenged acts are performed by a private government

7   contractor. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (noting that acts of private contractors

8   are not acts of the government).

9      Federal courts have recognized only two narrow exceptions to the state action requirement

10  under the U.S. Constitution: (1) when the private actor is performing a public function, *Jackson v.*

11  *Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974), and (2) when the government is so entangled

12  in private conduct that it affirmatively authorizes, encourages, or facilitates unconstitutional

13  conduct. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972). Neither exception applies here.

14     Plaintiff does not allege that SKDK, despite its contractor status, performed a public

15  function under the law. The public function exception applies only when a private actor performs a

16  function that is "both traditionally and exclusively governmental." *Prager Univ. v. Google LLC*,

17  951 F.3d 991, 997 (9th Cir. 2020). Because the exception is "difficult to meet," the short list of

18  recognized public functions includes "running elections," "operating a company town," "and not

19  much else." *Id.* at 997-98. None of those resemble SKDK's alleged action here: identifying a

20  publicly available Tweet as a potential source of election misinformation. Compl. ¶ 74. The

21  Complaint does not allege that reporting potential misinformation *to the government* is a

22  "traditionally and exclusively governmental" activity, nor can it do so with any degree of logic.

23  Accordingly, the public function exception does not apply. *See Prager*, 951 F.3d at 997.

24     Nor do Plaintiff's allegations satisfy the entanglement exception. The entanglement

25  exception applies only when the state has exercised such "coercive power," or has provided such

26  "significant encouragement" over the private conduct that the conduct is effectively that of the

27  state's. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Here, Plaintiff alleges no such thing. To be

28

-7-

sure, the Complaint states that SKDK contracted with the OEC to create daily briefings (among other things), which is the vehicle that SKDK ultimately used to identify Plaintiff's Tweet as one source of election misinformation. Compl. ¶ 74. But private acts "do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Rendell-Baker*, 457 U.S. at 841; *see also Blum*, 457 U.S. at 1004-05. The Complaint does not allege that the state exercised control over the substance or format of SKDK's daily briefings at all, let alone that the state influenced SKDK's specific decision to flag Plaintiff's Tweet as a potential source of misinformation. *See* Compl. ¶¶ 37-58. Because the Complaint fails to establish that either of the two narrow exceptions for private actors apply, Plaintiff has failed to show that SKDK is subject to the same constitutional restraints that bind the government under the U.S. Constitution.

Plaintiff also fails to establish that SKDK has taken part in any state action that would subject it to the same constitutional restraints as the state government under the California Constitution. California courts recognize a limited exception to the state-actor rule in the context of privately-owned shopping centers. *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d 899, 908 (1979); *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1183 (2014) (narrowing "the *Pruneyard* rule" to apply only to common areas of the shopping center). But the California Supreme Court has never extended the *Pruneyard* doctrine outside the context of a shopping mall's common areas. *Cf. Fashion Valley Mall, LLC v. Nat'l Lab. Rels. Bd.*, 42 Cal. 4th 850 (2007); *see also Kinderstart.com LLC v. Google, Inc.*, No. 06-2057, 2007 WL 831806, at *16 (N.D. Cal. Mar. 16, 2007) (dismissing alleged violation of California constitution because website was not "the 'functional equivalent of a traditional public forum'"). Thus, that exception does not apply here.

**B.   Plaintiff's Section 1983 claims against SKDK fail because SKDK did not act under color of state law.  (Claims I, III, and IV).**

For similar reasons, Plaintiff's Section 1983 claims against SKDK must be dismissed. Like the First and Fourteenth Amendments, Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.

-8-

40, 50 (1999) (citing *Blum*, 457 U.S. at 1002). Under § 1983, "a defendant may be liable for violating a plaintiff's constitutional rights only if the defendant committed the alleged deprivation while acting under color of state law." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020).

Those circumstances are not present here. "In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988). The determination of whether a nominally private person or corporation acts under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001). Courts have been clear, however, that "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "It is not enough to show that the State takes certain actions in response to [a] … private decision." *Rendell-Baker*, 457 U.S. at 843 (White, J., concurring).

The Ninth Circuit has "recognized at least four different general tests" to determine whether a defendant acted under color of state law: "(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson*, 975 F.3d at 747. The public function test requires that the defendant's challenged action is "both traditionally and exclusively governmental." *Id.* at 748. Both the government nexus and joint action tests require "a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself, or where the State has so far insinuated into a position of interdependence with the private party that it was a joint participant in the enterprise." *Id.* (cleaned up) The governmental compulsion test requires a showing that the private actor undertook the challenged action only because the State coerced or compelled it to. *Id.* The Ninth Circuit has acknowledged the similar nature of these tests, and explained that "[a]t bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* (cleaned up).

-9-

1    Although Plaintiff does not identify which test he presses his claim under, it is ultimately academic:

2    none of the four are met here.

3           Under Section 1983, a private actor's compliance with a state contract does not cloak a

4    private actor's conduct as the action of the state—even if the state ultimately took action based on

5    the recommendation of the contractor. *See NCAA*, 488 U.S. at 195. In *Tarkanian*, the NCAA

6    recommended that the University of Nevada-Las Vegas implement sanctions against its famous

7    basketball coach, which the university did. *See id.* at 181-82. The coach sued, and the Supreme

8    Court ordered dismissal of the suit against the NCAA for want of state action. *See id.* at 199. For

9    the Court, the question was whether UNLV's action on the NCAA's recommendation "turned the

10   NCAA's conduct into state action," and the Court found that it did not. *Id.* at 193. The facts are

11   even less compelling here, where SKDK's identification of Plaintiff's Tweet did not include an

12   accompanying recommendation for a specific course of action, as the NCAA's did. In neither

13   instance, however, do the government's downstream decisions reverberate back on the private actor

14   for purposes of Section 1983 liability.

15          Nor do any other facts support a finding of state action under Section 1983. Plaintiff does

16   not allege that SKDK performed any task that is traditionally, exclusively, performed by the

17   government. *See supra* at 11. Nor does Plaintiff allege that the State compelled SKDK to classify

18   Plaintiff's Tweet as election misinformation or include it in any briefings. *See supra* at 11-13. The

19   Complaint contains no facts supporting the inference that SKDK and the State were acting in a

20   sufficiently close nexus that SKDK's decision to flag Plaintiff's Tweet can be fairly characterized

21   as the decision of the State of California. In fact, the OEC's intervening review of Plaintiff's Tweet,

22   and the State's subsequent report to Twitter show that— even under Plaintiff's narrative of events—

23   his first Twitter "strike" was the result of multiple intervening actions by independent actors (only

24   some of which were state actors). Compl. ¶¶ 75-77. Because the Complaint fails to plausibly

25   demonstrate that SKDK acted under the color of state law under any recognized test, Plaintiff's

26   Section 1983 claims against SKDK must be dismissed.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      Even assuming that the Complaint established state action, Plaintiff fails to allege substantive constitutional violations.**

Even assuming that the Complaint adequately alleged standing and state action, the Complaint should still be dismissed against SKDK because it does not sufficiently plead that SKDK itself inflicted any cognizable constitutional injury upon Plaintiff.

**1.      Plaintiff's free speech claims fail (Claims I and II).**

The Complaint fails to plead facts that, accepted as true, establish that SKDK violated Plaintiff's speech rights under the U.S. or California Constitutions.

The First Amendment of the U.S. Constitution prohibits only acts that burden expression, not those that characterize it. *Meese v. Keene*, 481 U.S. 465, 478, 480 (1987). The Complaint only identifies one specific action that SKDK took: reporting one of his Tweets to OEC as potentially containing "misinformation." Compl. ¶ 74, 78. Long-established law makes clear that the government can constitutionally characterize speech, even with unfavorable labels, as long as it does not burden or silence the speech. *See Meese*, 481 U.S. at 481 (holding that a statute labeling certain art as "political propaganda" did not violate the First Amendment because it did not burden any speech). Thus, the Complaint fails to point to any action on SKDK's part that violated the Plaintiff's speech rights under the First Amendment.

Nor have Plaintiff's speech rights been violated under the California Constitution. The California Constitution guarantees that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const., art. I, § 2. Like the First Amendment, "California's free speech clause contains a state action limitation." *Golden Gateway Ctr.*, 26 Cal. 4th at 1023. Plaintiff pleads no facts establishing that SKDK acted with governmental authority when it flagged a Tweet to the OEC as a potential source of election misinformation. *Supra* at 6-10. Without any allegations that SKDK actually prohibited, chilled, burdened, penalized, or silenced any speech on behalf of the State, the Complaint fails to plead that Plaintiff's speech rights have been invaded under the California Constitution. *See* Cal. Const., art. I, § 2.

-11-

### 2.    Plaintiff's equal protection discrimination claim against SKDK fails (Claim III).

Plaintiff similarly fails to allege that SKDK violated his Fourteenth Amendment rights under the Equal Protection Clause. Without having pled that SKDK's inclusion of Plaintiff's Tweet was a cognizable state action, Plaintiff fails to demonstrate that SKDK's actions were subject to equal protection guarantees at all, let alone that it violated them.

Because Plaintiff does not allege that anyone other than him was allegedly discriminated against, his claim is considered a "class-of-one" equal protection claim. "Where a plaintiff is making a class-of-one claim, the essence of the claim is that only the plaintiff has been discriminated against, and therefore the basis for the differential treatment might well have been because the plaintiff was unique; thus, there is a higher premium for a plaintiff to identify how he or she is similarly situated to others." *Scocca v. Smith*, No. C-11-1318, 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012). To do so, Plaintiff must allege facts sufficient to support a plausible inference that SKDK (1) intentionally, (2) treated him differently than others similarly situated, (3) without a rational basis. *Hill St. Health Servs. LLC v. Cty. of Los Angeles*, No. 16-02486, 2016 WL 9453998, at *7 (C.D. Cal. Nov. 16, 2016). Plaintiff's allegations fall far short of these requirements.

Plaintiff does not allege that SKDK intended to—or did—single him out for differential treatment. Although filled with ominous rhetoric casting aspersions on SKDK, *see* Compl. ¶ 56, the Complaint does not contain a single allegation that SKDK intentionally targeted Plaintiff and treated him differently from other similarly-situated Twitter users. The allegations are the precise opposite: as described in the Complaint, Plaintiff's Tweet was one of a list of nine Tweets (by seven individual users) identified in just the November 13 briefing alone. *See* Compl. Ex. 6.[2]

---

[2] To the extent that Plaintiff's claim rests on the fact that not all Twitter users spreading election disinformation were identified in an SKDK briefing, that is not enough to establish a viable equal protection claim. *Hill St. Health*, 2016 WL 9453998, at *8 (finding the existence of similarly situated individuals insufficient to show differential treatment); *see also Scocca*, 2012 WL 2375203 at *5. If it were otherwise, essentially every prohibitory law would be subject to an equal protection claim whenever somebody escapes enforcement.

-12-

1    Even setting aside all previous arguments, the equal protection claim should still be

2    dismissed for failure to surmount one last, final hurdle: the rational basis test. As Plaintiff concedes,

3    rational basis scrutiny applies. *See Village of Willowbrook v Olech*, 528 U.S. 562 (2000); *see also*

4    Compl. ¶ 140. Under that test, the challenged action will be upheld if it has a rational relationship

5    to a legitimate state interest. Plaintiff must overcome a "presumption of rationality," which can only

6    be done by "a clear showing of arbitrariness and irrationality." *Hodel v. Indiana*, 452 U.S. 314, 331-

7    32 (1981).

8    Assuming solely for argument's sake that the rational basis test can be applied to the conduct

9    of a purely private actor like SKDK, the Complaint itself gives the best explanation of SKDK's

10   animating motivations as a contractor of OEC: the OEC was intended "[t]o monitor and counteract

11   false or misleading information regarding the electoral process . . . that may suppress voter

12   participation or cause confusion and disruption of the orderly and secure administration of

13   elections." Compl. ¶ 20 (quoting Cal. Elec. Code § 10.5(b)(2)); *see also id.* ¶ 64 (noting that

14   "[e]lection security continues to be a top priority for the Secretary of State's office," and the OEC's

15   goal was "to increase voter awareness about election misinformation online and provide official,

16   trusted election resources"). Court after court has affirmed that governments have an interest in

17   protecting the integrity and accuracy of elections. *See, e.g., Paralyzed Veterans of Am. v.*

18   *McPherson*, No. 06-4670, 2008 WL 4183981, at *24 (N.D. Cal. Sept. 9, 2008). Plaintiffs'

19   allegations confirm that this interest was served, not undermined, by SKDK's decision to flag his

20   Tweet to OEC as election misinformation.

21   **3.    Plaintiff's procedural due process claim against SKDK fails (Claim IV).**

22   Finally, Plaintiff fails to sufficiently allege that SKDK's actions violated his right to Due

23   Process under the U.S. Constitution. "A threshold requirement to a substantive or procedural due

24   process claim is the plaintiff's showing of a liberty or property interest protected by the

25   Constitution." *Hill St. Health*, 2016 WL 9453998, at *6. A property interest triggers due process

26   protections only when it is based on "a reasonable expectation of entitlement deriving from existing

27   rules or understandings that stem from an independent source such as state law." *Id.* at *6 (internal

28

-13-

1   quotation marks and citation omitted). When a position is held "at the will and pleasure" of a third

2   party, there is no protected property interest in it. *Bishop v. Wood*, 426 U.S. 341, 345 (1976).

3          Plaintiff fails at each step. He cannot establish a protected property interest in "pursuing his

4   occupation as a Twitter influencer and commentator," Compl. ¶ 150, because that position is held

5   "at the will and pleasure" of Twitter, a private company. *Hill St. Health*, 2016 WL 9453998, at *6;

6   *see also Shepherd v. Jones*, 136 Cal. App. 3d 1049, 1059 (1982) (finding no property interest in

7   employment that was held "at the pleasure" of a third party). Even if that property interest were

8   cognizable, he alleges no facts supporting the inference that SKDK deprived him of it. His

9   Complaint confirms that it was his own repeated violations of Twitter's internal policies that

10  ultimately led Twitter—not SKDK—to suspend his account. Compl. ¶ 3. Plaintiff alleges that

11  SKDK "flagged" just one of his Tweets. *Id.* ¶ 74. But Twitter suspended his account based on its

12  review of *five* of Plaintiff's Tweets. *Id.* ¶¶ 79, 84-88. And Plaintiff alleges no connection between

13  SKDK and Twitter's review of four of those Tweets. *See id.* ¶¶ 84-88. The due process claim against

14  SKDK should be dismissed.

15                    **4.      Plaintiff's conspiracy claim fails (Claim VI).**

16         Lastly, Plaintiff's claim that SKDK conspired with other Defendants to violate his civil

17  rights under Section 1985 should be dismissed. Compl. ¶¶ 167-76. To state a cause of action under

18  Section 1985, "a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of

19  persons of the equal protection of the laws, or of equal privileges and immunities under the laws,

20  (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury,

21  property damage or a deprivation of any right or privilege of a citizen of the United States."

22  *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88,

23  102-03 (1971)). "A mere allegation of a conspiracy without factual specificity is insufficient."

24  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). The Complaint does not

25  establish any of the required elements.

26         First, Plaintiff fails to allege a conspiracy. To plausibly allege a conspiracy under Section

27  1985, Plaintiff must plead facts sufficient to show "an agreement or 'meeting of the minds' to

28                                            -14-

violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc). To be liable, each participant of the conspiracy "must at least share the common objective of the conspiracy." *Id.* at 1541. Plaintiff alleges no facts indicating that each defendant shared a common objective. At best, Plaintiff alleges that Defendants desired to "censor speech which they found objectionable or 'misleading.'" Compl. ¶ 171. But aside from that conclusory allegation, Plaintiff offers no specific facts that actually demonstrate that Defendants had a meeting of the minds over that objective, let alone that each Defendant shared it. For that reason, Plaintiff's conspiracy claim fails. *Karim-Panahi*, 839 F.2d at 626.

Second, Plaintiff fails to allege that Defendants intended to discriminate against a class entitled to special protection. Section 1985's intent requirement "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102. The Ninth Circuit has extended Section 1985 "beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (cleaned up). Plaintiff alleges only that Defendants intended to discriminate against "individuals who questioned election processes and outcomes." Compl. ¶ 168. But Plaintiff does not even attempt to allege that that "class" merits any heightened protections. *Id.* ¶¶ 168-69. That failure is fatal to Plaintiff's Section 1985 claim.

Finally, Plaintiff did not plausibly allege that he has been personally injured or deprived of any right or privilege. *See supra* at 7-8, 16-21. Although the Complaint states that Plaintiff has suffered "economic and reputational injuries," Compl. ¶ 173, it alleges no facts supporting those claimed losses and no explanation for how SKDK was part of a conspiracy that caused them. In the context of a conspiracy claim, such conclusory allegations are not enough. *Karim-Panahi*, 839 F.2d at 626. This claim, too, should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should grant Defendant SKDK's motion to dismiss all claims against it.

-15-

Dated:  October 5, 2021

**PERKINS COIE LLP**

By: */s/ Bruce V. Spiva*
    Bruce V. Spiva, CA Bar No. 164032

    Bruce V. Spiva, CA Bar No. 164032
    Brian G. Svoboda*
    Stephanie Command*
    BSpiva@perkinscoie.com
    BSvoboda@perkinscoie.com
    SCommand@perkinscoie.com
    PERKINS COIE LLP
    700 Thirteenth Street, N.W., Suite 800
    Washington, D.C. 20005-3960
    Telephone:    202.654.6200
    Facsimile:    202.654.6211

    Torryn Taylor Rodgers, CA Bar No. 319126
    TRodgers@perkinscoie.com
    PERKINS COIE LLP
    505 Howard St., Suite 1000
    San Francisco, CA 94105-3204
    Telephone:    415.344.7000

    *Attorneys for Defendant*
    *SKDKnickerbocker, LLC*

-16-